UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURNICE FORD,

    Petitioner,

v.                                              Case No. 8:08-cv-1975-T-23EAJ

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Ford petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for robbery with a firearm and felony fleeing to elude, for which convictions Ford serves fifteen years. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 11) The respondent admits the petition's timeliness. (Response at 8 Doc. 11) The petition lacks merit.

## **FACTS**[1]

On January 5, 2000, Ford entered a Radio Shack store in Lakeland, Florida, in the middle of the afternoon. After both browsing inside the store and conversing with the victim (the store manager), Ford pointed a "snub-nosed" revolver at the victim's head after the victim retrieved from a top shelf the video game Ford requested. Ford demanded money from the cash register. The victim followed Ford's instructions to lay

---

[1] This summary of the facts derives from Ford's brief on direct appeal. (Respondent's Exhibit 1)

on the floor after putting money from the cash register into a bag that Ford provided. The victim immediately called the police after hearing Ford exit the store.

Based on the victim's description, a police officer saw a possible suspect, who fled when the officer approached the vehicle. The chase ended when the driver stopped and surrendered. Ford was the driver of the vehicle, inside which the officer found the bag of money and the video game from the Radio Shack. After he was advised of his Miranda rights, Ford confessed to the robbery and asserted that he threw the gun from the car window while fleeing. Police found a revolver beside the highway along Ford's escape route.[2]

The police transported the victim to the scene of the arrest, where the victim positively identified Ford as the robber. Before the jury trial, Ford formally consented to counsel's strategy to admit to the robbery but argue that he used a toy gun. The jury convicted Ford of armed robbery as charged.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[2] Ford claimed that the gun found was not his and that he had used a plastic toy gun. The victim, who was familiar with guns, testified that the gun the police found is similar to the gun used by the robber.

- 2 -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. at 694.  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011).  <u>Accord</u> <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the

- 3 -

objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Federal courts must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). See also Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a per curiam decision without a written opinion the state appellate court affirmed Ford's convictions and sentences on direct appeal. (Respondent's Exhibit 3) Similarly, in another per curiam decision without a written opinion the state appellate court affirmed the denial of Ford's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 18) The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245,

1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003). See also Richter, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Pinholster, 131 S. Ct. at 1398. Ford bears the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). The state court's rejection of Ford's post-conviction claims warrants deference in this case. (Orders Denying Amended Motion for Post-Conviction Relief, Respondent's Exhibits 13 and 15)

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Ford claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.  Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the

- 6 -

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.  <u>Strickland</u> requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Ford must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691-92.  To meet this burden, Ford must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

<u>Strickland</u> cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91.  Ford cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

<u>White v. Singletary</u>, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  <u>Accord</u> <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

- 7 -

lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Ford must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes an independent assessment of "whether the state habeas court was objectively reasonable in its Strickland inquiry" but not an independent assessment of whether counsel's actions were reasonable.  Putnam v. Head, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), cert. denied, 537 U.S. 870 (2002). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 131 S. Ct. at 788.  See also Pinholster, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of Strickland and the AEDPA."), and Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim

that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

The state court both adopted the prosecutor's response and summarily denied Ford's amended motion for post-conviction relief without an evidentiary hearing. (Respondent's Exhibit 14 and 15) The state's response specifically recognizes that Strickland governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 14 at 4) Because the state court applied Strickland by adopting the response, Ford cannot meet the "contrary to" test in Section 2254(d)(1). Ford instead must show that the state court unreasonably applied Strickland or unreasonably determined the facts. The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

Ground One:

Ford alleges that trial counsel was ineffective for not "mov[ing] to suppress the in-court and out-of-court identification by" the victim and for not "mov[ing] the court to suppress and [sic] testimony or other evidence concerning [the victim]'s identification of the defendant." The post-conviction court adopted the argument in the state's response (Respondent's Exhibit 14), which cites state cases that are based on the controlling federal precedent.

A defendant possesses a due process right to exclude identification testimony resulting from an unnecessarily suggestive identification procedure that was conducive to irreparable mistaken identification. Manson v. Brathwaite, 432 U.S. 98, 104 (1977); Stovall v. Denno, 388 U.S. 293, 301-02 (1967). A suggestive identification procedure,

without more, results in no due process violation. Neil v. Biggers, 409 U.S. 188, 198-99 (1972). Rather, to violate due process the identification procedure must unnecessarily suggest a suspect and create a substantial risk of misidentification. Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987). "Where suggestive pretrial confrontations may have created a substantial likelihood of irreparable misidentification at trial, the core question is whether under the totality of the circumstances, the in-court identification was reliable." Jones v. Newsome, 846 F.2d 62, 64 (11th Cir. 1988). "Reliability is the linchpin in determining the admissibility of identification testimony . . . ." Brathwaite, 432 U.S. at 114. "Factors to be considered in determining whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification." United States v. Diaz, 248 F.3d 1062, 1102 (11th Cir. 2001) (citing Biggers, 409 U.S. at 199).

Each factor supports the reliability of the victim's identification of Ford as the robber. At trial the victim was unable to identify Ford as the robber because of the elapse of more than four years between the robbery and the trial. But the victim testified that, shortly after the robbery, he positively identified as the robber the person the police arrested.

> Q. And how far were you from the robber when you were making this identification?
>
> A. A car length away.
> . . . .
>
> Q. Did you get a good look at the person?

> A. Yes, sir. He was turned around in the back seat of the cruiser.
>
> Q. Was there any doubt in your mind that the person who had just robbed you is the same person they had in that police vehicle?
>
> A. No doubt in my mind at that time.

Respondent's Exhibit 22 vol. I at 31. In addition to the victim's certainty and the short passage of time, the victim's attention was specifically directed to Ford as a customer before the robbery and the victim's description was reasonably accurate. Although the victim revealed that, while waiting for a police transport to the scene of the arrest, he overheard a radio transmission stating that the police had stopped a man with the money bag and the Radio Shack video game, this evidence casts no doubt on the victim's identification. Only the robber would have a reason to flee from police in that locale and on that day and at that time of day; only the robber would match the description; and only the robber would possess both a bag of money and the specific video game stolen from a Radio Shack. The identification of Ford was neither unnecessarily suggestive nor conducive to irreparably mistaken identification. The state court's rejection of this claim is a reasonable application of Strickland.

Ground Two:

Ford alleges that trial counsel was ineffective for not moving to suppress all statements and evidence because the initial attempted traffic stop was legally unjustified. The record shows that trial counsel filed an unsuccessful motion to suppress statements and admissions (Respondent's Exhibit 22 vol. I at 36-37). Additionally, Ford's "seizure" occurred after he fled and committed numerous traffic violations, not when the officer first approached Ford's car. See California v. Hodari D.,

499 U.S. 621, 626 (1991) ("An arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority."). See also Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989) (holding that a twenty-mile police chase with flashing lights, although a "show of authority," was not a seizure). Ford fails to show that trial counsel performed deficiently.

Grounds Three and Four:

Ford alleges that (ground four) the Miranda rights read to him failed to advise him of his right to the presence of counsel during the interrogation and that (ground three) trial counsel rendered ineffective assistance by not moving, based on the allegedly deficient Miranda warning, to suppress the results of the interrogation. The post-conviction court rejected this claim as follows (Respondent's Exhibit 13 at 2):

> [T]he record establishes that Defendant's trial took place in March of 2004. In May of 2004 the Fourth District Court of Appeal began issuing opinions that expressed the view that when Miranda warnings advise a Defendant that he has the right to have an attorney present before any questioning but does not also advise him that he has the right to have an attorney present during questioning, such warnings are constitutionally inadequate. See Robert v. State, 874 So. 2d 1225 (Fla. 4th DCA 2004); Franklin v. State, 876 So. 2d 607 (Fla. 4th DCA 2004); and President v. State, 884 So. 2d 126 (Fla. 4th DCA 2004). Prior to Roberts there were no Florida district court opinions expressly making such a ruling. Therefore, Defendant, in essence, suggests his attorney should have discovered and argued a view that would have been new and novel at the time. The Court finds defense counsel cannot be held to the standard expounded by Defendant. Namely, that defense counsel should have anticipated the rulings of the Fourth District Court of Appeal and was ineffective for not doing so. Such is not the standard set forth in the Sixth Amendment to the United States Constitution or in the opinions determining whether counsel was effective or ineffective.

The post-conviction court's rejection of Ford's ineffective assistance of counsel claim (ground three) is a reasonable application of controlling federal law because the state

- 12 -

court's ruling is consistent with federal precedent. See e.g., United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) ("In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."), cert. denied, 535 U.S. 979 (2002).

Additionally, Ford's substantive Miranda claim is foreclosed by Florida v. Powell, ___ U.S. ___, 130 S. Ct. 1195, 1204 (2010) (citations omitted), which found that Miranda warnings nearly identical to those read to Ford were sufficient to "convey to a suspect his rights as required by Miranda." Ford erroneously dissects the individual parts of the Miranda warnings rather than considering each warning in context with the others. "Although the warnings were not the clearest possible formulation of *Miranda*'s right-to-counsel advisement, they were sufficiently comprehensive and comprehensible when given a commonsense reading." Powell, 130 S. Ct. at 1205 (italics original)

Ground Five:

Ford alleges that the post-conviction court violated his due process rights by "rul[ing] on his amended 3.850 motion which did not contain a sworn oath." This allegation fails to assert a claim reviewable in a federal habeas petition. See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[A]n alleged defect in a collateral proceeding does not state a basis for habeas relief.").

Accordingly, Ford's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Ford and close this case.


## **CERTIFICATE OF APPEALABILITY**

Rule 11(a), Rules Governing Section 2254 Cases, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As stated in Slack v. McDaniel, 529 U.S. 473, 483-84 (2000):

> To obtain a COA under § 2254(c), a petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Barefoot, supra, at 893, and n.4, 102 S. Ct. 3383 ("sum[ming] up" the "substantial showing" standard).
>
> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. This construction gives meaning to Congress' requirement that a prisoner demonstrate substantial underlying constitutional claims and is in conformity with the meaning of the "substantial showing" standard provided in Barefoot, supra, at 893, and n.4, 102 S. Ct. 3383 . . . .

An applicant need not show probable success on appeal, but the issuance of a certificate of appealability entails more than "mere good faith" or only the "absence of frivolity." As stated in Miller-El v. Cockrell, 537 U.S. 322, 338 (2003):

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in Slack [v. McDaniel, 529 U.S. 473 (2000)], "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484, 120 S. Ct. 1595.

Ford's petition for the writ of habeas corpus was denied on the merits. Because jurists of reason would not fairly debate whether the petition states a valid claim of the denial of a constitutional right, a certificate of appealability is unwarranted.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed in forma pauperis on appeal is **DENIED**. Ford must pay the full $455 appellate filing fee without installments unless the circuit court allows Ford to proceed in forma pauperis.

ORDERED in Tampa, Florida, on November 16, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE